RECEIPT #
AMOUNT $ 150.00
SUMMONS ISS. N
LOCAL RULE 4.1
WAIVER OF FORM.
MCF ISSUED
AO 120 OR 121
BY DPTY CLK rmm
DATE 10-22-01

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LILY TRANSPORTATION CORP., | : | CIVIL ACTION NO. |
|     Plaintiff, | : | |
| | : | |
| v. | : | **01.11823DPW** |
| | : | |
| SMG, INC., | : | |
|     Defendant. | : | OCTOBER 19, 2001 |

## NOTICE OF REMOVAL OF ACTION

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS:

Petitioner SMG, Inc. ("SMG") respectfully states the following facts:

1. Plaintiff Lily Transportation Corp. ("Lily") has served a Complaint dated September 28, 2001 in an action against SMG in the Trial Court of Massachusetts, Superior Court Department, Suffolk County.

2. On October 11, 2001, SMG was served with the Complaint, a copy of which is attached as Exhibit A as required by 28 U.S.C. §1446(a).

258453



3.   This Notice of Removal is being filed within thirty (30) days of SMG's receipt of notice of the Complaint.

4.   In Paragraph 1 of the Complaint, Lily alleges that it is "a Massachusetts corporation with a place of business in Roxbury, Massachusetts."

5.   In Paragraph 2 of the Complaint, Lily correctly alleges that SMG is a Delaware corporation.  Also, SMG has its principal place of business in the State of Kentucky.

6.   In Paragraph 24 of the Complaint, Lily claims damages that "are at least in excess of $180,000."

7.   Thus, the Complaint alleges a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Under 28 U.S.C. § 1332, this Court has original jurisdiction over this action.

8.   This action, therefore, is removable under the provisions of 28 U.S.C. § 1441.

9.   Venue is proper in the district under 28 U.S.C. §1441(c) because this district embraces the place where the removed action has been pending.

10.   SMG is filing a copy of this Notice of Removal with the Clerk of the Trial Court of Massachusetts, Superior Court Department, Suffolk County.

11.   Plaintiff did demand a jury in the state court action.

12.   SMG demands a trial by jury in this federal action.

WHEREFORE, SMG requests that the above-captioned action be removed from the Trial Court of Massachusetts, Superior Court Department, Suffolk County, to the United States District Court for the District of Massachusetts.

Respectfully submitted,
SMG, INC.,

By: _____
FRANK G. USSEGLIO, ESQ.
BBO# 549340
Updike, Kelly & Spellacy, P.C.
One State Street
P.O. Box 231277
Hartford, CT   06123-1277
(860) 548-2600

CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed,

postage prepaid, in the United States mail, this 19th day of October,

2001, to:

Erik Lund, P.C.
Heather A. Lacy
Posternak, Blankstein & Lund, L.L.P.
100 Charles River Plaza
Boston, Massachusetts  02114-2723
(representing plaintiff Lily)

By: _____
     FRANK G. USSEGLIO, ESQ.
     Updike, Kelly & Spellacy, P.C.

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. __01-4484E__

LILY TRANSPORTATION CORP. _____ , Plaintiff(s)

v.

SMG, INC. _____ , Defendant(s)

## SUMMONS

To the above-named Defendant:

    You are hereby summoned and required to serve upon __Heather A. Lacey, Esquire__ __Posternak, Blankstein & Lund, L.L.P.__ plaintiff's attorney, whose address is __100 Charles River Plaza, Boston, MA 02114__ an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    Witness, Suzanne V. DelVecchio, Esquire, at Boston, the _____ __fifth__ _____ day of __October__ _____ , in the year of our Lord two thousand __and one__ _____ .

_Michael Joseph Donovan_

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

    (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 30M 10/2000

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

| CIVIL ACTION COVER SHEET | DOCKET NO (S) B.L.S. | Trial Court of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) LILY TRANSPORTATION CORP. | DEFENDANT(S) SMG, INC. |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Erik Lund, Esquire, P.C., BBO #307500/ POSTERNAK, BLANKSTEIN & LUND, L.L.P. Board, Charles River Plaza, Boston, MA 02114 | ATTORNEY (if known) Heather A. Lacey, Esquire, BBO #638299 |

Origin Code

Original Complaint

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.        TYPE OF ACTION (specify)    TRACK      IS THIS A JURY CASE?

BE 1            Breach of Contract/93A     ( B )*     ( XX ) Yes    ( ) No

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

. This action is eligible for the Business Litigation Session because the claims involve complex, legal and factual issues regarding the parties' business relationship under a dedicated transportation agreement and the defendant's breach thereof.

The plaintiff is seeking money damages resulting from defendant's failure to honor its contractural obligations under the dedicated transportation agreement by failing and/or refusing to pay for services rendered and terminating the agreement without proper notice and in bad faith to leverage a settlement.

*A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT  NA

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____  DATE: 9/28/01

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                          SUPERIOR COURT DEPARTMENT
                                     BUSINESS LITIGATION SESSION

---

LILY TRANSPORTATION CORP.,
        Plaintiff,

v.

SMG, INC.,
        Defendant.

---

### COMPLAINT AND JURY CLAIM

This is a complaint for relief for breach of contract and unfair or deceptive business

practices in violation of Mass. G. L c. 93A. The plaintiff seeks money damages based upon: (1)

defendant's failure to honor its contractual obligations to plaintiff arising under a dedicated

transportation agreement; and (2) the defendant's admitted attempt to manufacture false

allegations of default under the agreement in order to leverage a settlement.

### THE PARTIES

1. The plaintiff, Lily Transportation Corp. ("Lily"), is a Massachusetts corporation with

a place of business in Roxbury, Massachusetts. Lily is in the business, among other things, of

providing drivers, tractors and trailers for shipping goods for customers as a contract carrier.

2. The defendant, SMG, Inc. ("SMG"), is a Delaware corporation duly registered and

qualified to do business in the Commonwealth of Massachusetts. SMG sells food products

throughout the Northeast, including to numerous wholesalers and retail establishments within the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

3. Jurisdiction in this Court is proper pursuant to Mass. G. L. 223A, §3 and other applicable law. Venue is proper in Suffolk Superior Court based upon Mass. G. L. 223 §1.

4. This Court also has jurisdiction and venue over the controversy pursuant to the parties' express agreement, which provides, in pertinent part:

> [SMG] hereby consents to the service of process from and the jurisdiction of the Superior Court, Suffolk County, Commonwealth of Massachusetts in the event of litigation between the parties, and [SMG] hereby waives the right to bring an action or suit in any other place.

## FACTS COMMON TO ALL CLAIMS

5. Effective November 29, 1999, Lily and SMG entered into a written agreement known as the "Dedicated Contract Carriage Transportation Agreement" with attached Schedules A to C (collectively the "Agreement"). A true and accurate copy of the Agreement is attached hereto, marked "A".

6. The Agreement has a term of three (3) years, commencing November 29, 1999, with annual renewals thereafter unless one of the parties terminates the contract by providing the requisite notice. The Agreement involves mutual obligations with respect to Lily's delivery of SMG food products throughout the Northeast, including Massachusetts, using equipment leased by SMG from Lily and a third party.

2

7. Lily invoices SMG, on a weekly basis, for the services provided under the Agreement. The Agreement requires SMG to pay the invoices within 10 to 15 days of receipt of each invoice, "without setoffs or other deductions therefrom unless authorized in writing by Lily, and if such amount is not paid when due, such charges shall bear interest at the rate of 10% per annum." (Article 7 of Exhibit A and Schedule A thereto).

8. The Agreement provides SMG with 21 days to protest, in writing, the "correctness" of Lily's invoices. Without the requisite protest notice, each "invoice shall be conclusively presumed to be correct." (Article 7 of Exhibit A and Schedule A thereto).

9. Lily has provided services to SMG and rendered invoices for said services which SMG has failed and/or refused to pay. Lily has never received the requisite notice of protest with respect to any invoice provided to SMG.

10. Article 13 of the Agreement provides for early termination of the Agreement in the event of default. It states, in pertinent part, that:

> If [SMG] shall default in the performance of its obligation to pay any rates or charges due to Lily hereunder and if such default shall continue for ten (10) days, Lily shall have the right to terminate this Agreement without notice or demand. If within sixty (60) days *after* written notice from either party to the other specifying any other default and the other party has not cured the default or has not commenced diligently to correct the default so specified or has not thereafter diligently pursued such correction to completion, the party giving the notice shall have the right to terminate this Agreement without any further notice or demand.

11. The Agreement also provides that SMG "shall reimburse Lily for all costs and expenses incurred by it, including reasonable attorney's fees, in enforcing the Agreement." (Exhibit A, Article 14).

3

ID # 260182v01/1062-262
9/27/2001

12. Approximately a year and a half after the commencement of the Agreement and the parties performance thereunder, on or about April 17, 2001, Lily and SMG representatives met to discuss the parties' ongoing relationship. During the meeting, SMG noted that Lily had been providing excellent service under the Agreement. Notwithstanding this acknowledgement, SMG advised Lily that it sought to negotiate an early termination of the Agreement because the company felt as though it could perform Lily's services at a more cost-effective rate, making SMG's operations more profitable.

13. At the April 17, 2001 meeting, SMG admitted that it had solicited proposals from other carriers and that no carrier was able or willing, to meet Lily's level of service under the Agreement.

14. When Lily expressed its interest in maintaining the business relationship and reminded SMG of its contractual obligations, SMG advised Lily that it intended to break the contract and that it would manufacture a default on Lily's part if Lily would not allow SMG to buy out of the Agreement. SMG's representative also stated that, in any event, he believed the Agreement to be complex enough to fabricate a claim of default by Lily.

15. Immediately thereafter, Lily wrote SMG a letter documenting the discussion between SMG and Lily, and SMG's threat made at the April 17, 2001 meeting. In Lily's letter, a copy of which is attached, marked "B", Lily reiterated its desire to maintain the business relationship with SMG and reluctantly offered SMG the opportunity to buy out of the Agreement for "$190,000 plus the impact of severance to direct operating personnel and unamortized start up cost."

4

16. SMG responded to Lily's correspondence requesting information as to how Lily computed the $190,000 figure. It did not, however, dispute or deny Lily's written confirmation of SMG's intent to fabricate a default under the Agreement if the parties could not negotiate a mutually agreeable buy-out of the Agreement.

17. Lily and SMG had further discussions and negotiations regarding SMG's requested early termination of the Agreement. The negotiations were unsuccessful as SMG was unwilling to reasonably compensate Lily for its losses under the Agreement.

18. On September 5, 2001, without any prior notice of default as required by the Agreement, SMG carried out its promise to break the contract by advising Lily, for the first time, of an unspecified default, and informing Lily that the Agreement would terminate effective October 6, 2001. A copy of SMG's termination letter is attached, marked "C".

19. On September 12, 2001, counsel for Lily responded to the purported termination notice urging SMG to withdraw the defective termination notice and honor its contractual obligations to Lily. A copy of this correspondence is attached, marked "D".

20. On September 13, 2001, Lily's counsel received SMG's response refusing to withdraw the notice and reaffirming SMG's termination of the Agreement. A copy of this correspondence is attached, marked "E".

## CLAIMS

21. Lily repeats and realleges the allegations in the foregoing Articles of its Complaint as if fully stated herein.

22. Lily has substantially fulfilled all of its obligations under the Agreement.

5

23. SMG has substantially and materially failed to perform its obligations under the Agreement, and has violated the implied covenant of good faith and fair dealing contained in the contract.

24. SMG's breach of the Agreement has caused Lily to suffer damages, in an amount to be determined at trial. The damages are at least in excess of $180,000.

25. SMG's breach of the Agreement has also required Lily to incur legal expenses to enforce the contract, in an amount to be determined at trial.

26. Lily and SMG are persons engaged in trade or commerce.

27. SMG's conduct in violation of the implied covenant of good faith and fair dealing, its manufacturing baseless and unspecified allegations of default to coerce Lily to accept less money than that owed under the Agreement, and/or to leverage a settlement and its purported termination of the contract, constitute unfair or deceptive business practices by SMG within the meaning of Mass. G. L. c. 93A, § 11.

28. Pursuant to the parties' Agreement, their conduct is governed by Massachusetts law.

29. SMG acted knowingly and willfully in committing unfair or deceptive trade practices.

30. The unfair or deceptive conduct set forth herein caused Lily monetary damages and Lily should be awarded its damages, in an amount to be determined at trial, trebled, plus its attorneys' fees, costs and expenses.

WHEREFORE, the plaintiff demands judgment as follows:

(1) in the amount of its damages for SMG's breach of contract

6

and of the implied covenant of good faith and fair dealing,

plus Lily's costs, expenses, interest and attorneys' fees as permitted

under the contract;

(2) that this Court award Lily its damages, in an amount to be determined

at trial, against the defendant SMG, doubled or trebled, pursuant to

Mass. G. L. c. 93A, with costs and attorneys' fees;

(3) that this Court award Lily interest on all amounts and the costs of this action;

and

(4) that this Court award Lily such other and further relief as the Court

deems just and proper.

## JURY CLAIM

The plaintiff, Lily Transportation Corp., demands a jury trial on all issues so triable.

LILY TRANSPORTATION CORP.
By its attorneys,

Erik Lund, P.C., BBO #307500
Heather A. Lacey, BBO #638299
POSTERNAK, BLANKSTEIN & LUND, L.L.P.
100 Charles River Plaza
Boston, MA   02114-2723
(617) 973-6100

7



## Dedicated Contract Carriage Transportation Agreement

Between

_____ SNG, INC. _____ and

Lily Transportation Corp.    145 Rosemary Street    Needham, MA 02494    Telephone 781-449-8811

This agreement (the "Agreement") is made as of **11/29**, **1999**, by and between the Customer herein named ("Shipper"), and Lily Transportation Corp. ("Lily").

1. This Agreement shall be operative until the expiration of the latest Term specified on Schedule A attached hereto, or on any additional Schedules now or subsequently made a part hereof by reference herein. Following the Term, this Agreement shall continue from year to year thereafter unless terminated by either party by giving the other party not less than ninety (90) days prior written notice of such termination, to be effective as of the next anniversary date.

2. Subject to the terms and conditions contained in this Agreement, Shipper agrees to tender commodities to Lily for transportation by Lily, and Lily agrees to accept and deliver the commodities promptly and efficiently at Lily's sole cost and expense. Schedule C sets forth the operational parameters upon which the rates and charges listed on Schedule B are predicated. In the event of any material deviation by Shipper from those parameters, the rates and charges set forth on Schedule B will be equitably increased.

3. Lily agrees to provide and keep available during the term of this Agreement those vehicles specified on Schedule A to this Agreement (such vehicles are collectively referred to in this Agreement as the "Equipment" and individually as an "item of Equipment"), solely and exclusively for the transportation of Shipper's commodities. Shipper agrees to compensate Lily for providing and keeping the Equipment available solely and exclusively for the movement of the commodities during the term of this Agreement, pursuant to the terms specified on Schedule B to this Agreement, or on any additional Schedules now or subsequently made a part hereof by reference herein.

4. If Lily has provided the Equipment, Lily shall, at its sole cost and expense, furnish all oil, tires, and other parts, supplies and equipment necessary or required for the safe and efficient operation and maintenance of the Equipment. Lily shall pay all expenses of every nature, including the expense of road service and repair, in connection with the use and operation of the Equipment and shall, at its sole cost and expense, at all times during the term of this Agreement, maintain the Equipment in good repair, mechanical condition and appearance in accordance with Department of Transportation and Federal Highway Administration standards.

5. Lily, at its sole cost and expense, shall employ competent, able, and properly licensed personnel in the operation of the Equipment.

6. As full compensation for the transportation services to be performed by Lily, Shipper shall pay Lily in accordance with the rates and charges contained on Schedule B as supplemented or amended from time to time. Lily and Shipper recognize that the rates and charges provided for in Schedule B are based on Lily's current costs and that these costs may increase. Accordingly, the rates and charges set forth in Schedule B (except for Pass Through Charges) shall be increased by the percentage increase in the most recently published Consumer Price Index for All Urban Consumers U.S. City Average "All Items" for the United States (the "Index") published by the United States Bureau of Labor Statistics, above the Index figure set forth on Schedule A. Adjustments shall occur semi-annually. In the event the Index shall be discontinued, Lily shall substitute another cost adjustment index.

7. Lily shall render to Shipper weekly invoices for the services performed under this Agreement, and Shipper shall make payment within seven (7) days after receipt of each invoice without setoffs or other deductions therefrom unless authorized in writing by Lily, and if such amount is not paid when due, such charges shall bear interest at the rate of 10% per annum. If the correctness thereof is protested, Lily must be advised immediately in writing of such protest within seven (7) days after receipt of such invoice by Shipper, or such invoice shall be conclusively presumed to be correct.

8. Lily shall procure and maintain all licenses and permits required by local, state, or Federal authorities with respect to the transportation services performed under this Agreement and shall comply with all laws and regulations controlling the performance of such services.

9. Lily shall perform the transportation services provided for in this Agreement as an independent contractor and shall have exclusive control and direction of, and be solely responsible for, the persons operating the Equipment or otherwise engaged in such transportation services. Lily assumes full responsibility for the acts and omissions of such persons and shall be responsible for the payment of local, state, and Federal payroll taxes or contributions for unemployment insurance, worker's compensation, social security, and/or similar obligations for each person engaged in the performance of such transportation services and agrees to comply with all applicable rules and regulations pertaining to such obligations.

10. Lily shall procure and maintain, at its sole expense, comprehensive, general, and auto liability insurance with a reputable and financially responsible insurance carrier or carriers properly insuring Lily, and naming Shipper as an additional insured, against liability and claims for injuries to persons including injuries resulting in death or for damage to property in an amount not less that one million dollars ($1,000,000) combined single limits coverage for each occurrence.

Lily further agrees that it shall defend, indemnify and hold Shipper harmless from and against all loss, damage, expense, actions, and claims including attorney fees for injury to persons including injury resulting in death and damage to property (collectively "Claims") arising out of or in connection with Lily's performance hereunder; excluding, however, any such claims arising out of the deliberate or negligent acts or omissions of Shipper, its agents, servants, employees or consignees.

11. Risk of loss or damage to any commodities rests with Lily except (i) while the commodities are on Shipper's premises or (ii) if it results from the improper loading or unloading of the commodities by Shipper. Shipper will not permit any of the Equipment to be used to transport any of Shipper's property or material deemed hazardous by reason of being explosive or fissionable or in violation of any recommendations of the manufacturer or in violation of any Federal, state or municipal statutes, laws or ordinances applicable to the operations of such Equipment or the carriage of the commodities, and Shipper will hold Lily harmless from any and all fines, legal fees, forfeitures and penalties for violation of any such statutes, laws, ordinances, rules or regulations of any duly constituted public authority relating to the foregoing.

12. Neither party shall be liable under this Agreement for its failure or delay in fulfilling its obligations if such failure or delay is the result of Federal, state or local laws, rules or regulations, invasions, insurrections, riots, civil war or commotion, military or usurped power, acts of god or labor disturbances ("force majeure"), whether or not of the same character as described herein, but due diligence shall be used in curing such cause and in resuming performance. No party shall be required to settle any strike or labor disturbance, however. In no event will the Fixed Charges be abated in the event of any failure or delay in performance due to any force majeure occurrence.

13. If Shipper shall default in the performance of its obligation to pay any rates or charges due to Lily hereunder and if such default shall continue for ten (10) days, Lily shall have the right to terminate this Agreement without notice or demand. If within sixty (60) days after written notice from either party to the other specifying any other default and the other party has not cured the default or has not commenced diligently to correct the default so specified or has not thereafter diligently pursued such correction to completion, the party giving the notice shall have the right to terminate this Agreement without any further notice or demand.

8/99DCC

14. Shipper shall reimburse Lily for all co    and expenses incurred by it, including reasonable a    ey's fees, in enforcing this Agreement or any of Lily's separate rights hereunder. Likewise,    shall reimburse Shipper in enforcement of this Agr    ent under the same terms as outlined in this paragraph.

15. Under no circumstances will Lily be liable for business loss or interruption whatsoever, or any other indirect or consequential damages incurred by Shipper.

16. This Agreement shall terminate automatically and without notice upon the occurrence of any of the following events: the dissolution, termination of existence, insolvency, business failure, appointment of a receiver of any part of the property of Shipper, assignment for the creditors by Shipper, or the filing by Shipper of a petition in bankruptcy, or the commencement of any proceedings under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension, by or against Shipper. In the event of automatic termination as set forth in the preceding sentence, or if this Agreement is terminated by either party on account of default by the other, Lily shall have the option to require Shipper to purchase the Equipment or any item(s) of Equipment specified by Lily. In the event Lily exercises its option, the purchase price for such Equipment is to be computed by subtracting the Depreciation Credit to date of purchase from the Agreed Value, both as set forth on Schedule A. The purchase price shall be payable in full at Lily's main office at the time for transfer of title, together with all monies due to Lily and all other adjustments and charges herein specified. Title shall remain in Lily until the whole purchase price is paid. Each item of Equipment purchased by Shipper shall be purchased as is, where is, and without any warranties or representations on the part of Lily, express or implied. Shipper does not have the right or obligation to purchase any Equipment at the expiration of the Term. In the event of the termination of this Agreement as provided herein, any credits due Shipper and held by Lily shall be applied by Lily in the following order: first, toward the payment of any and all charges then due and to become due from Shipper to Lily; second, in the event Shipper has purchased any Equipment, toward the payment of the purchase price of the said Equipment; third, any balance remaining shall be remitted to the Shipper. Shipper shall reimburse Lily on the termination date for (i) any unexpired licenses, insurance, applicable taxes (including personal property taxes and federal highway use taxes) and any other pre-paid expenses paid or to be paid by Lily allocable to the unexpired portion of the period or periods for which such charges or taxes may have been paid or may be thereafter payable; (ii) any costs incurred by Lily during the period prior to termination which exceeded the average cost thereof over the Term when such average cost was used in the calculation of the rate (e.g., interest, excise taxes, and the like); and (iii) Investment Tax Credit recapture or other negative tax consequences resulting from the sale of the Equipment to Shipper.

17. In the event of a default by Shipper and if Lily elects not to require Shipper to purchase any Equipment, Lily shall have the option to collect liquidated damages at the time of termination in an amount equal to the fixed rate for the terminated Equipment multiplied by the number of weeks remaining from the date of termination to the expiration of the Term discounted at 6% to determine present value. The foregoing right to collected liquidated damages is in addition to Lily's right to collect any amounts owed to Lily up to the date of termination.

18. If Lily is asked to provide fuel for the Equipment, Lily will supply fuel and invoice Shipper at its pumped cost.

19. Any management information system or computer hardware or software used in service to Shipper is the sole and exclusive property of Lily. It is provided by Lily solely for Lily's own use in serving Shipper. Neither this nor any access granted Shipper by Lily, nor the assessment of any separate or additional charges to Shipper, will convey to Shipper any use, license, or ownership rights. All software, including but not limited to codes and algorithms contained therein, all report and screen formats, and all documentation associated therewith are valuable and proprietary to Lily. Shipper shall keep all such property confidential and shall not copy, sell, publish, disclose, display, reverse engineer, use for its own purposes or in any way make available to any third party, any of such property in whatever form or reproduction, without the prior written consent of Lily.

20. During the Term of this Agreement, and, for an additional one year thereafter, Shipper shall not, directly or indirectly, hire or attempt to hire any person who is an employee of Lily. In the event Shipper violates this provision, Lily may elect to collect from Shipper, and Shipper agrees to pay to Lily, an amount equal to twice the compensation of the employee during the twelve months immediately preceding his termination of employment with Lily.

21. During the Term of this Agreement, Shipper agrees that Lily will be its sole and exclusive carrier for the shipment of its commodities by contract or common carrier, unless Lily otherwise agrees.

22. All notices required hereunder shall be in writing, signed by or on behalf of the party giving the same, mailed certified mail return receipt requested, or by overnight courier, addressed to Lily, Attn: John Simourian, 11, President) or Shipper at its address herein set forth, and shall be deemed effective when deposited in the mail or with the courier.

23. Shipper hereby consents to the service of process from and the jurisdiction of the Superior Court, Suffolk County, Commonwealth of Massachusetts in the event of litigation between the parties, and Shipper hereby waives the right to bring an action or suit in any other place.

24. This Agreement sets forth the entire Agreement between the parties with respect to the subject matter of this Agreement and any prior understandings, proposals, representations, or Agreements between the parties shall be deemed to have merged into this Agreement.

25. This Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

26. The form of this Agreement is intended for general use in the United States of America, and in the event that any of the terms and provisions are in violation of or prohibited by any law, statute or ordinance of the city, state or municipality where it is used, such term or provision shall be of no force and effect to the extent of such violation or prohibition without invalidating any of the other terms and provisions of this Agreement.

27. Any delay or failure by either party to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same, or any other right at any other time and from time to time thereafter.

Lily Transportation Corp.

By: _____

Title: _____
JOHN SIMOURIAN II, PRESIDENT
AND CHIEF OPERATING OFFICER

Shipper:    SMG, INC.

By: _____

Title: _____ PRESIDENT & CEO

Printed Name: _____ Joseph A. McCloskey

Address: _____ 2890 CHANCELLOR DRIVE, SUITE 210
(Street and Number)
CRESTVIEW HILLS, KENTUCKY 41042
(City)          (State)          (Zip)

# Schedule 'A' – Addendum to Dedicated Contract Carriage Transportation Agreement

This **ADDENDUM** dated November 29, 1999, between SMG, Inc. and **LILY TRANSPORTATION CORP.** becomes part of the Dedicated Contract Carriage Agreement dated November 29, 1999. It is understood and agreed between the parties hereunto that the following amendments shall supersede and subordinate any language to the contrary.

**Article 1**: The initial terms of this Agreement shall be three (3) years from the date of signing of this Agreement.

**Article 6**: The CPI increase is governed as follows:
1) Any EDART tractor increase is based on the current lease with EDART.
2) Any Lily trailers increase is based on the current lease with Lily.
3) Any Union drivers increases are based on the existing or future contract.
4) The CPI will not apply to all items listed above as being governed by existing contracts or leases.
5) The CPI written in the agreement will govern the increase. There will be no increase on these items in the first year and the maximum increase will be 3% in any year thereafter.

**Article 7**: The seven day payment period shall be changed to 10 to 15 days and the seven day protest period shall be changed to 21 days.

**Article 11**: Add to the end of Article 11, " Additionally, Lily personnel are responsible for maintaining the proper designated temperature in their trailers so that the goods can be delivered in acceptable condition based on a mutual agreed to temperature indicated on the bill of lading or other shipping document. Lily assumes liability resulting from failure to maintain temperatures indicated on the bill of lading or other shipping document. The risk management policy of Lily will be in accordance with Schedule C attached hereto. Lily will provide SMG with insurance certification upon execution of the agreement and within 7 days of any change in insurance carriers or coverage. Insurance certificate must show SMG, Inc. as additional insured for auto liability, cargo, and general liability coverages."

**Article 13**: After "ten (10) days" add the following language: "shippers receipt of written notice of default."

**Article 15**: Will be reciprocal to both parties.

**Article 16**: Article 16 shall be amended in its entirety as follows: "This Agreement shall terminate automatically and without notice upon the occurrence of any of the following events: the dissolution, termination of existence, insolvency, business failure, appointment of a receiver of any part of the property of Shipper, assignment for the benefit of creditors by Shipper, or the filing by Shipper of a petition in bankruptcy, or the commencement of any proceedings under any bankruptcy or insolvency laws or any laws relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension, by or against either party.

The parties agree that if this Agreement is terminated by Shipper on account of a breach of this Agreement by Lily, Shipper will reassume the Equipment leases with Lily and Edart of any item(s) of equipment leased under the Equipment Leases specified by Shipper. In the event Shipper reassumes the Equipment Leases, Lily shall be obligated to return the equipment in the same condition as originally provided by Shipper, minus ordinary wear and tear. In the event Lily does not return the equipment to Shipper in the same condition as originally provided by Shipper, Lily shall be obligated to repair or replace such damaged equipment prior to returning the equipment to Shipper. The foregoing right is in addition to Shipper's right to collect any amounts owed to shipper up to the date of termination."

**Article 20**: Article 20 shall be amended in its entirety as follows: "During the term of this Agreement, and for one year thereafter, neither party shall actively recruit any particular employee of the other party who has been working with or for either party. Since SMG is supplying nine drivers to Lily, in the event SMG hires Lily's drivers this restriction shall not apply to the first nine drivers of Lily hired by SMG. Additionally, Lily will leave its management in place for up to 120 days at SMG's request if this Agreement is terminated, and Lily shall be entitled to charge SMG for the services of such management at the same

rates as in effect at the time of termination. Notwithstanding the foregoing restrictions, either party may hire employees of the other party that respond to classified advertising for job opportunities with the written approval of the employer, provided however, Lily hereby acknowledges that approval should not be required for the first nine drivers."

**Article 26:** If Lily Transportation Corp. does not meet the established and mutually agreed to performance criteria, SMG has the right to terminate this agreement after giving Lily Transportation Corp. 30 days written notice to cure any deficiencies as outlined in our agreement.

1) Delivery window:

First 60 days 94% 30 minutes on either side of the delivery time
Second 60 days 96% 30 minutes on either side of the delivery time
After 3 months 98% 30 minutes on either side of the delivery time

Provided late delivery is in the control of Lily. Lily will provide documentation to support late deliveries upon request by SMG. Delivery is based on Cadec reported activity.

2) Cost per pound for fleet and common carrier operations will not to exceed $.055 per pound gross back-haul, inter-company, and intra company revenue.

**Article 27:** Lily Transportation Corp. will track the following metrics and provide SMG with reports monthly
1) Cost per Pound for Fleet per Week
2) Cost per Pound for Common Carriers per Week
3) Time per Stop per Week
4) Cost per Stop per Week
5) Pounds per Stop per Week
6) Cost per Fleet Hour per Week
7) Miles per Unit per Week
8) Trucks and Cube per Truck per Week
9) Trucks and Stops per Truck per Week
10) Drivers and OT Hours per Day per Week

Agreed: LILY TRANSPORTATION CORP.

by _____
                                    Title
JOHN SIMOURIAN II, PRESIDENT
AND CHIEF OPERATING OFFICER

by _____
    (print signer's name and title)

date __12/27/99__

Agreed: SMG, INC.

by _____
                                    Title

by _____
    (print signer's name and title)

date __11.29.99__

**lily**

## Schedule 'B' - SMG Inc.

| Fixed Components | Charge | Basic | Volume | Weekly Charges | |
|---|---|---|---|---|---|
| (3) LTA 9000 TAC | $ 0.00 | per week | 0 | $ | 0 |
| (4) LTA 9000 TAS | $ 0.00 | per week | 0 | $ | 0 |
| (2) LTA 9000 TAS | $ 0.00 | per week | 0 | $ | 0 |
| Sub-Total Tractors – Fixed | | per week | 0 | $ | 0 |
| (12) Trailmobile 01AN | 0 | per week | 0 | $ | 0 |
| Sub-Total Trailers – Fixed | | per week | 0 | $ | 0 |
| Liability and Physical Damage | $1,000 | per week | 1 | $ | 1,000 |
| On-Site Management | $2,200.00 | per week | 1 | $ | 2,200 |
| Start-Up Costs | $38.00 | per week | 1 | $ | 38 |
| Profit | $900.00 | per week | 1 | $ | 900 |
| **Weekly Fixed Charges** | | | | **$** | **4138** |

| Variable Components | Charge | Basis | Weekly Volume | Weekly Charges | |
|---|---|---|---|---|---|
| TAC Regular Hourly Rate | $ 25.25 | per hour | 120 | $ | 3,030 |
| TAC Overtime Hourly Rate | $ 28.15 | per hour | 15 | $ | 422 |
| TAS Regular Hourly Rate | $ 25.25 | per hour | 240 | $ | 6060 |
| TAS Overtime Hourly Rate | $ 28.15 | per hour | 30 | $ | 845 |
| TAC Mileage | $ 0.000 | per mile | 0 | $ | 0 |
| TAS Mileage | $ 0.000 | per mile | 0 | $ | 0 |
| Trailer Mileage | $ 0.0200 | per mile | 9.905 | $ | 198 |
| Layover charge TAS | $ 24.58 | per layover | 4 | $ | 98 |
| Backhaul Pick-up | $ - | per pick-up | 0 | $ | - |
| Reefer Maintenance | $ 0.60 | per hour | | | |
| **Weekly Variable Charges:** | | | | **$** | **10,653** |

| Pass-Through Components | Charge | Basis | Weekly Volume | Weekly Charges | |
|---|---|---|---|---|---|
| TAC Fuel* | $ 1.10 | per gallon | 677 | $ | 745 |
| TAS Fuel* | $ 1.10 | per gallon | 847 | $ | 932 |
| Reefer Fuel* | $ 0.66 | per gallon | 360 | $ | 238 |
| NY HUT | $ 0.066 | per mile | 771 | $ | 51 |
| Tolls | $ 615.00 | per week | 1 | $ | 615 |
| **Weekly Pass-Through Charges:** | | | | **$** | **2581** |
| **Estimated Weekly Charges:** | | | | **$** | **17,417** |



## Schedule 'B' - SMG Inc. Continued

* Note: Refer to Schedule C, Article
33 for details on fuel costs.

| Rental Rates (Incl Insurance) | Charge | | Basis | Volume | Weekly Charges | |
|---|---|---|---|---|---|---|
| Tandem Axle Conventional Tractor | $ | 92.00 | per day | 0 | $ | - |
| | $ | 0.06 | per mile | 0 | $ | - |
| Tandem Axle Sleeper Tractor | $ | 107.00 | per day | 0 | $ | |
| | $ | 0.06 | per mile | 0 | $ | - |
| 22' Refrigerated Straight Truck | $ | 85.00 | per day | 0 | $ | - |
| | $ | 0.07 | per mile | 0 | $ | - |
| | $ | 0.55 | per hour | 0 | $ | |
| **Sub-Total Extra Tractor Rental** | | | | | $ | - |
| 48' Refrigerated Trailer | $ | 55.00 | per day | 0 | $ | - |
| | $ | 0.03 | per mile | 0 | $ | - |
| | $ | 0.55 | per hour | 0 | $ | - |
| **Sub-Total Extra Trailer Rental** | | | | | $ | - |
| **Total Extra Equipment Rental** | | | | | $ | - |
| **Total Invoice** | | | | | $ | 17,417 |

Lily Transportation Corp.

BY _Jm S. Wall_

TITLE _Ex V.P._

DATE _8-10-01_

SMG Inc. dba MOSEY'S

BY _(signature)_

TITLE _Director of Logistics_

DATE _8/10/2000_



# Schedule 'C' - SMG Inc. Operating Assumptions

1    SMG's Drivers typically work a five-day week – Monday through Friday.

2    SMG's personnel load the trailer.

3    Driver is responsible for pulling load to the tail of the trailer at delivery. However other work may be required, including fingerprinting cases, pallets or loads. Lily is responsible for service levels Including on time delivery and claims processing.

4    Stop time calculated at 45 minutes as an average.

5    Individual stop times vary.

6    Peak season occurs from January to March of each year (10-12 week period). It is Lily's intention to add a minimum of 50% more capacity to support this peak delivery period. Lily also intends to add to the private fleet in lanes that Lily identifies after completely Understanding SMG Inc.'s delivery requirements (after 60 days). It is also possible That we may add a class B truck for local and miscellaneous deliveries.

7    Assumptions based on data provided by customer from 12/1/98-4/30/99.

8    Backhaul revenue calculated at $150,000 based on what SMG Inc. is currently generating on the private fleet. The information on where these backhauls come from will be provided by SMG when the agreement is signed.

9    Routing and scheduling for each route is completed by 5:00 p.m., the day before a run is made.

10   There is a 3:30pm cut off for orders taken for the following day. Orders taken after this time will be reviewed by the Distribution Manager of SMG Inc. and the Lily Transportation Operation Manager.

11   All appointments are set prior to the appointment day, or at a minimum, the day before shipment by the Lily administrator. The on time performance metric will be based on criteria other then the exception call.

12   Common Carriers are responsible for setting and scheduling their own appointments.

13   All common carrier freight bills will be approved by Lily and processed for payment by SMG, after approval.

14   Pricing based on 9 tractors and 9 drivers, and 12 refrigerated trailers. The equipment will be painted in SMG, Inc. colors and logos, provided that service is covered in the vehicle leases. If it is not covered it will be done as a pass through expense to SMG.

15   On site Lily manager and clerk dedicated to the SMG, Inc. operation.

16   Driver pay and benefit increases will be in accordance with Union Local #371 Food and Commercial Workers Union AFL-CIO labor contract.

17   Fuel, NY Hut, and toll billing will be a direct pass through.

18   We are guaranteeing our dedicated rate provided the criteria used to determine the rate remains reasonably constant, i.e. equipment required, miles operated, and service levels.

19   SMG Inc. will provide appropriate office space and computer support for the Lily
     Transportation Corp.'s management and staff.

20   Total operation is overseen by a Lily Logistics operations manager in conjunction with SMG
     Director of Logistics ( or appointee). Decisions effecting labor must have SMG involvement
     i.e. be involved with the takeover of the union and incentive program offered the union.

21   Drivers assumed to work 45 hours a week or 22,464 hours per year.

22   Fleet mileage assumed to be 515,000 miles per year.

23   Lily personnel negotiates all outgoing freight not handled by the private fleet in conjunction
     with SMG's personnel. SMG's current relationships will be considered and will take
     precedence over new relationships providing there is due consideration for better rates
     and service. If SMG insists on using a higher rate carrier, then Lily Transportation
     Corp., nor its employees, will be held responsible for potential costs, or savings.

24   It is Lily Transportation's intent to reduce common carrier costs by renegotiations of
     common carrier rates or by utilization of its own equipment. Any savings in combined fleet
     and common carrier costs over 10% will be shared on an equal 50-50 basis.

25   Lily Transportation personnel will benchmark historical costs against current costs. For
     the purpose of developing freight savings percentage. There will be periodic reviews
     of this information to establish savings.

26   There is currently no pension withdrawal liability, when Lily assumes SMC Inc.'s current
     contract with the local union and there is to the best of our ability to determine, no
     pension withdrawal liability for Lily in the future. If there is pension liability identified
     after Lily assumes the contract SMG Inc. will indemnify Lily for the first three years on
     a declining basis 100% in the first year, 66-2/3% in the second year, 33 - 1/3% in the
     third year.

27   Lily will assume, pay, perform and discharge all liabilities and obligations of Shipper under the
     current tractor lease with EDART and current trailer lease arising after the date hereof.
     Accordingly, Shipper will not be liable for any liabilities or obligations, contingent or otherwise,
     under such leases arising or accruing after the date hereof, including any liabilities arising after
     the date hereof which relate to actions or inactions of Lily, unless any lease or portion of a lease
     is reassumed by Shipper in accordance with Article 16 of the Agreement.

28   Cadec system will be installed in all EDART tractors after the agreements
     have been all signed and approval is granted by Edart.

29   Lily and SMG will make every effort to link up their computers providing it is practical
     from a cost standpoint and that the cost is shared equally.

30   If the cost to link Lily Transportation Corp. and SMG Inc. computer systems exceeds $10,000,

31   Lily is responsible for the physical damage and the cargo hauled on trailers supplied by Lily to
     SMG Inc. On SMG trailers Lily will not be liable for cargo damage resulting from a refrigeration
     failure unless it is from clear and proven negligence on the part of the Lily employee.

32   Lily will arrange for all special deliveries to be made on a timely basis at the request of SMG.

33   The cost of fuel, purchased at Lily facilities, will be billed to SMG at Lily Dedicated Service Cost less

2%, which is currently $1.31 per gallon.

34   The parties agree to evaluate driver compensation if qualified and experienced drivers are not available in the market at current pay scales.

35   The signing parties have read, and agree to the assumptions and conditions contained in the Schedule C of this proposal.

36   All of the equipment and labor in this proposal carry Lily insurance without any deductible to SMG Inc. SMG Inc. will have no financial obligation in the event of a mishap. The legal relationship between SMG and Lily is "arms length". Lily will operate as an independent service provider. All liability for the actions of Lily's employees rests with Lily.  Carried insurance includes:

Auto liability-Bodily injury and property damage insurance in the amount of $1,000,000.00 combined single limit

Workers Compensation-Applies to bodily injury by accident or to bodily injury by disease for Workers Compensation and Employer's Liability coverages. Statutory limit for Workers Compensation coverage, $1,000,000.00 limit for Employer's Liability coverage

Cargo-$1,000,000.00 limit in any one loss, casualty, or disaster

General Liability-$9,000,000.00 Property limit: $2,000,000.00 General Aggregate and Products/Completed Operations limit

Garage Liability- $1,000,000.00 limit for bodily injury and Property damage each accident

Umbrella- Minimum of $30,000,000.00 following form of underlying coverage's

In addition, Lily is a self-insurer of physical damage of all Lily owned equipment that is leased, rented, or hired from others.

37   Replacement drivers will be provided in the event of illness or vacation, trained in SMG, Inc delivery procedures and regulations

Additional Roles and Responsibilities-we will conduct regular inspections of drivers and equipment to ensure quality of work and consistent maintenance of appearance, as well as provide safety training, plan, develop, implement, and coordinate all the dispatch functions, hire, approve, and evaluate all drivers, and schedule drivers and assign equipment to meet routing requirements.

All Lily drivers will have the following characteristics: approved by the Safety Department, 100% compliance with D.O.T. Rules and Regulations, qualification through a regimented road test and hiring process, meet Lily's driving history requirement and professional appearance. Lily's drivers will undergo constant training and supervision to improve their skills and raise safety awareness.

In contracting Lily to be your dedicated carrier, you will no longer have the responsibility for all DOT compliance including---Hours of service and Log falsification, Driver Qualification Files, Controlled Substance and Alcohol Screening Program, Annual Driver Reviews, and Driver Physical Certification.

Lily will maintain its ISO 9002 certification.

Agreed: LILY TRANSPORTATION CORP.

by _____ Title

JOHN SIMOURIAN II, PRESIDENT
AND CHIEF OPERATING OFFICER

by _____
(print signer's name and title)

date ___12|27|99___


Agreed: _____

by _____ Title

by _____
(print signer's name and title)

date ___1.29.99___

Exhibit B



**Lily Transportation Corp.**
145 Rosemary Street
Needham, MA 02494
Telephone: 781-449-8811
Facsimile: 781-449-7128
http://www.lily.com

Mr. Don Stanton,
SMG, Inc.
2890 Chancellor Drive Suite 210
Crestview Hills, Kentucky 41017

Dear Don,

Thank you for joining me for dinner last Tuesday and the frank and open discussion about our relationship. Based on the significance of the issues discussed I thought it appropriate to respond in writing.

Following is my understanding of your position. You would like to negotiate a release from the transportation agreement between our companies. You acknowledged the excellent service metrics that we were recording each week and the good job we had done during your recent busy season. You shared with me that you had requested proposals from both Ryder and Penske on the business Lily currently operates under contract and that both responded that they would be unable or unwilling to perform to the parameters required. Despite the above you feel you could reduce cost and maintain adequate service levels if you took over the operation. You requested permission to hire the Lily drivers and management as part of a negotiated release from the agreement. You advised me that if we were unable to negotiate a release from the agreement that you were prepared to pursue other means to break our agreement no matter how difficult. You stated that the contract was complex and vague enough that an argument for default of the agreement could be presented if we do not reach an agreement. Your final comment was that you hoped we could do this the easy way and maintain a relationship in other areas.

Don, I was very surprised at your request to break our contract and more surprised at your inference to opportunities for default. Lily has and will continue to perform to the letter of our agreement. We will vigorously defend and resist any attempt to diminish the value of the Transportation Agreement signed by your company on November 29, 1999.

It is our desire to maintain a long-term relationship with Mosey's, in the current dedicated carrier mode or through other services we offer. With that in mind I am open to a discussion establishing the value of the remaining term of our contract and allowing a buyout of your obligation. The projected value of our agreement operating through the

**Lily Transportation Corp.**
145 Rosemary Street
Needham, MA 02494
Telephone: 781-449-8811
Facsimile: 781-449-7128
http://www.lily.com



term of November 29, 2002 is $190,000 plus the impact of severance to direct operating personnel and unamortized start up cost. In addition, we will provide schedule A values for the trailers currently on lease.

I will contact you next week to begin this dialog. Best to you and your family.

Sincerely,


James E. Walker
Vice President

Exhibit C

# SMG, INC.













JOSEPH P. McCLOSKEY
EXECUTIVE VICE PRESIDENT

September 5, 2001

Lily Transportation Corp.
145 Rosemary Street
Needham, MA 02494
Attention: John Simourian II,
           President and Chief Operating Officer

Re:    Dedicated Contract Carriage Transportation Agreement

Dear Mr. Simourian:

Reference is hereby made to that certain Dedicated Contract Carriage Transportation Agreement dated as of November 29, 1999 (the "Agreement") by and between SMG, Inc. ("SMG") and Lily Transportation Corp. ("Lily").

Please be advised that SMG will terminate the Agreement effective as of October 6, 2001 (the "Effective Date"). While SMG regrets that it is necessary to effect the foregoing change, please be advised that this decision is based upon good cause in furtherance of the legitimate business needs and interests of SMG. This action is necessitated solely by Lily's breach of its obligations and duties under the Agreement, including, but not being limited to, Lily's (i) failure to meet the established and mutually agreed to performance criteria and (ii) repeated and continual inability to cure the same after due notice from SMG. SMG has afforded Lily with numerous opportunities and a more than adequate time period in which to cure these performance deficiencies. In this regard, SMG has allowed Lily a cure period which is well in excess of that provided within the Agreement.

SMG expects that Lily will honor its obligations and duties under the Agreement at all times prior to the Effective Date. SMG will likewise honor its obligations and duties during this period. Notwithstanding the foregoing, SMG reserves the right, in its sole and absolute discretion, to make alternative arrangements for the distribution of its products during the period prior to the Effective Date. Further, in the event that Lily fails to honor its obligations and duties under the Agreement or otherwise attempts to contest the termination of the Agreement, SMG will exercise all available legal rights and remedies, including claims for damages resulting from Lily's failure to meet the above referenced performance criteria.

252704

Lily Transportation Corp.
September 5, 2001
Page 2

SMG regrets that it is necessary to take the foregoing action. We would ask that you advise the undersigned of an appropriate contact person for Lily to handle issues relating to the transition through the Effective Date.

Regards,

Joseph P. McCloskey
Executive Vice President

Cc:   Thomas D. Davis
      Jim Fisher
      Craig Reed
      Don Stanton
      Jeff Wolter, Updike, Kelly & Spellacy, P.C.

Exhibit D

# POSTERNAK, BLANKSTEIN & LUND, L.L.P.

### ATTORNEYS AT LAW

## 100 CHARLES RIVER PLAZA
## BOSTON, MASSACHUSETTS 02114-2723

FIRM INFORMATION
TEL 617-973-6100
FAX 617-367-2315
www.pbl.com

NOEL G. POSTERNAK, P.C.
TEL   617-973-6100
FAX   617-722-4942
nposternak@pbl.com

September 12, 2001

**Via Facsimile and U.S. Mail**
Joseph P. McCloskey
Executive Vice President
SMG, Inc.
2890 Chancellor Drive, Suite 210
Crestview Hills, KY  41017

Dear Mr. McCloskey:

This office represents Lily Transportation Corp., and your letter of September 5, 2001 has been turned over to us for reply.

This reply will use the definitions set forth in your letter.

In order for SMG to terminate the Agreement on account of Lily's breach, SMG is required to give written notice to Lily, either by certified mail or by overnight courier, specifying the nature of the default and only if Lily has not thereafter cured the default may SMG terminate the Agreement. Lily has no record of receiving any notice of default from SMG at any time during the term of the Agreement. Hence, my client is at a loss to understand the statement in your letter that Lily has failed to meet the performance criteria after "repeated and continual inability to cure the same after due notice from SMG."

Leaving aside SMG's failure to comply with the notice and cure provisions of the Agreement, the actual performance criteria are set forth in Article 26 of the Addendum. As SMG well knows, Lily has consistently exceeded the performance criteria, and my client is again at a loss to understand SMG's position.

Unless SMG withdraws its termination notice on or before 5:00 p.m., September 14, 2001, Lily will commence an action in the Superior Court located in Suffolk County,

ID # 258724v01/1062-1
9/12/2001

POSTERNAK, BLANKSTEIN & LUND, L.L.P.

Joseph P. McCloskey
September 12, 2001
Page 2

Commonwealth of Massachusetts to collect damages from SMG for breach of the Agreement, including attorneys' fees as provided in the Agreement, and will also seek treble damages as provided in Massachusetts General Laws Ch. 93A based upon SMG's bad faith termination.

Very truly yours,

Noel G. Posternak, P.C.


cc:    John A. Simourian
       John Simourian II
       James Walker

ID # 258724v01/1062-1
9/12/2001

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO            2616
CONNECTION TEL      8018#1062*1#18593443737
CONNECTION ID       SMG INC
ST. TIME            09/12 14:04
USAGE T             00'28
PGS. SENT           3
RESULT              OK
```

# POSTERNAK, BLANKSTEIN & LUND, L.L.P.

## ATTORNEYS AT LAW

100 CHARLES RIVER PLAZA
BOSTON, MASSACHUSETTS 02114-2723
(617) 973-6100

DATE:    September 12, 2001
FILE NO.:   1062-1

TOTAL PAGES INCLUDING THIS COVER SHEET:   3

PLEASE DELIVER TO:   Joseph P. McCloskey, Executive Vice President
COMPANY NAME:   SMG, Inc.
CITY:   Crestview Hills        STATE:   KY
BUSINESS PHONE:   (859) 344-3700    FACSIMILE NO.:   (859) 344-3737

☒   NOTICE TO OFFICE SERVICES:   **DO NOT FAX TO ANOTHER NUMBER UNLESS ATTORNEY IS NOTIFIED**

FROM:   Noel G. Posternak, P.C.

BUSINESS PHONE: (617) 973-   6100        FACSIMILE NO.: (617) 367-2315

IF THERE IS A PROBLEM, PLEASE CALL AND ASK FOR   x6220

COMMENTS:

******CONFIDENTIALITY NOTICE******
The documents accompanying this FAX transmission contain information from the Law Firm of Posternak, Blankstein & Lund, L.L.P. which is confidential or privileged. The information is intended to be for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this FAX information is prohibited. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE

Exhibit E

# Updike, Kelly & Spellacy, P.C.

**Counselors at Law**

Hartford   •   New Haven   •   Stamford

*Independent Member of*
*Commercial Law Affiliates*

Frank G. Usseglio
(860) 548-2643
fusseglio@uks.com

One State Street, P.O. Box 231277
Hartford, Connecticut 06123-1277
Telephone (860) 548-2600
Facsimile (860) 548-2680

September 13, 2001

## VIA FACSIMILE

Noel G. Posternak, Esq.
Posternak, Blankstein & Lund, L.L.P.
100 Charles River Plaza
Boston, MA  02114-2723

Re:   Lily Transportation Corp./SMG, Inc.

Dear Mr. Posternak:

This office represents SMG, Inc. ("SMG") and is receipt of your letter dated September 12, 2001 relative to the termination of the Dedicated Contract Carriage Transportation Agreement dated November 29, 1999 (the "Agreement").

Please be advised that SMG will not withdraw its letter dated September 5, 2001. SMG has carefully reviewed all of the facts and circumstances relating to this matter and its historic course of dealings with Lily Transportation Corp. SMG undertook this decision in furtherance of its legitimate business interests and in full compliance with all terms and conditions of the Agreement. There has been no bad faith in any respect on the part of SMG relative to this matter. There is likewise no basis for Lily Transportation Corp. to claim that it has "consistently exceeded the performance criteria."

SMG will vigorously defend any legal action that may be initiated by Lily Transportation Corp. and will counterclaim to recover the significant damages incurred by SMG as a result of Lily Transportation Corp.'s breach of its obligations under the Agreement, including, but not being limited to, the cost per pound guarantees.

SMG would urge you to review the entire record of correspondence, invoices and other contacts between our respective clients relating to the Agreement before initiating any legal action. We believe that such a review will demonstrate that no advantage will be gained by your client from litigation.

Should you wish to discuss this matter further, please contact me or John F. Wolter, Esq. of this office.

Very truly yours,

FRANK G. USSEGLIO

FGU/crd
cc:   Joseph P. McCloskey
        Don Stanton

254719